# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James C. Whalen, : 
        Petitioner : 
  : No. 1263 C.D. 2016
    v. : 
  : Argued: April 4, 2017
Department of Education, : 
        Respondent : 


BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge


OPINION BY
JUDGE McCULLOUGH                            FILED: May 8, 2017


James C. Whalen (Petitioner) petitions for review of the June 29, 2016 order of the Department of Education's Professional Standards and Practices Commission (Commission), which denied Petitioner's exceptions to the proposed report and order of a hearing officer and immediately revoked his professional educator certification and eligibility to be employed as a charter or cyber charter school staff member or a contracted educational provider staff member.


## Facts and Procedural History

The underlying facts of this case are not in dispute. Petitioner holds an Instructional II teaching certificate in the area of Mathematics 7-12. From the fall of 1991 through June, 2001, Petitioner was employed as a teacher in the W.T. Woodson High School within the Fairfax County (Virginia) Public Schools. Petitioner commenced his employment with the Peters Township School District (District) in

McMurray, Pennsylvania in the fall of 2006. On September 2, 2012, the District received a letter from R.B., who had been a student of Petitioner when he taught in Virginia, alleging that Petitioner had engaged in an inappropriate and sexual relationship with her while she was his student. On September 5, 2012, the District's high school principal met with R.B. to discuss her allegations. (Commission's Findings of Fact Nos. 1-5.)

R.B.'s allegations to the District triggered a mandatory report to the Department of Education (Department) pursuant to section 9.1(a)(3) of the then-titled Professional Educator Discipline Act (PEDA).[1] The Department received the District's mandatory report on September 18, 2012. The allegations in the mandatory

---

[1] Act of December 12, 1973, P.L. 397, added by the Act of December 20, 2000, P.L. 918, *as amended*, 24 P.S. §2070.9a(a)(3). In 2014, the Act was renamed the Educator Discipline Act (EDA). Section 9.1(a)(3) provides as follows:

> **(a)** The chief school administrator or his designee shall file all of the following information with the department in writing on a form prescribed by the department:
>
> . . .
>
> **(3)** Any educator against whom allegations have been made that the educator has:
>
>> **(i)** committed sexual abuse or exploitation involving a child or student; or
>>
>> **(ii)** engaged in sexual misconduct with a child or student.
>
> The report shall be filed within 15 days of the discovery of the allegations of misconduct.

24 P.S. §2070.9a(a)(3).

report involved conduct occurring between January 1, 1998, and December 31, 2001, when R.B. was between the ages of 14 and 16 and a student at W.T. Woodson High School in Virginia. At the time the allegations were brought to the District's attention in 2012, R.B. was 28 years of age. (Commission's Findings of Fact Nos. 6-9.)

### Educator Misconduct Complaint and Notice of Charges

On September 20, 2012, two days after receipt of the mandatory report, the Department filed an educator misconduct complaint against Petitioner.[2] By letter dated October 25, 2012, the Department notified Petitioner that a legally sufficient educator misconduct complaint had been filed against him and that the Department had determined that probable cause for discipline existed. On May 14, 2014, the Department filed a notice of charges against Petitioner with the Commission. (Commission's Findings of Fact Nos. 10-12.)

In its notice of charges, the Department charged Petitioner with immorality, negligence, and intemperance, and sought revocation of his professional educator certification and employment eligibility, based on the following allegations:

> 4. As set forth more fully below, between approximately January 1, 1998 and December 31, 2001, [Petitioner] engaged in unprofessional conduct. More specifically, [Petitioner] engaged in an inappropriate relationship with a female student ("RB") beginning when she was 14 years of age that included comments on her physical appearance, letters, emails, online chats and handwritten notes indicating his desire to start, and then continue, a romantic and sexual relationship. [Petitioner] escalated the

---

[2] Section 9(b) of the Act, added by the Act of December 14, 1989, P.L. 612, *as amended*, 24 P.S. §2070.9(b), specifically permits the Department to file an educator misconduct complaint.

relationship to include deeply romantic letter writing, spending time alone with the student, and physical and sexual contact beginning when the student was 16 years of age. The sexual contact included countless instances of physical intimacy including kissing and touching, multiple instances of oral intercourse and one occasion of vaginal intercourse. In his written and verbal communication, [Petitioner] indicated that RB was not the first student or significantly underage woman he'd developed strong feelings for nor the first with whom he'd acted on such feelings with.

5. Written correspondence that [Petitioner] has already admitted to writing to RB contains statements such as "love you deeply", "I am yours for keeps", and (regarding their relationship) "I know it's not correct but I don't care".

6. In addition, RB discovered that [Petitioner] accessed pornography while in his classroom, using his District-issued computer. This pornography depicted females dressed like school-girls and other images of young girls. [Petitioner] admitted, both to RB and in a letter to her, that he [has known he's had] "a problem with pornography for a while". The letter goes on to reference his "inability to control [his] desires for women and girls".

(Commission's Finding of Fact No. 13; Notice of Charges at ¶¶4-6; Reproduced Record (R.R.) at 7a-8a.)

On June 11, 2014, Petitioner filed a motion to stay the deadline to answer the notice of charges and a petition for a declaratory order, arguing that the limitation on filing of complaints set forth in section 9(a) of the PEDA, formerly 24 P.S. §2070.9(a),[3] barred prosecution of the matter and requesting dismissal of the

---

[3] Section 9(a), which has since been repealed by the Act of December 18, 2013, P.L. 1205, provided that disciplinary proceedings had to be initiated "by the filing of a complaint with the department by any interested party within one year from the date of the occurrence any alleged action . . . or from the date of its discovery." This section further provided that "[c]omplaints involving sexual abuse . . . of a child or a student may be filed beyond the date of the alleged
**(Footnote continued on next page…)**

4

notice of charges.  The Commission granted Petitioner a stay to file an answer to the notice of charges and scheduled consideration of Petitioner's petition for a declaratory order for its July 14, 2014 meeting.  The Commission heard oral argument at this meeting and issued an order dated July 17, 2014, finding that in the absence of either an express or implied grant of power to provide declaratory relief, it was without authority to consider Petitioner's request.  (Commission's op. at 2.)

On August 4, 2014, Petitioner filed an answer to the notice of charges with new matter and a motion to dismiss reiterating that the charges brought against him were barred by the time limitation of section 9(a) of PEDA, to which the Department filed a reply.  The Commission heard oral argument at its September 15, 2014 meeting, and subsequently denied Petitioner's motion, finding that the charges were not barred by this time limitation.  (Commission's op. at 2-3.)

**Proposed Report of Hearing Officer**

On January 30, 2015, the Commission appointed a hearing officer and a hearing was held on July 30-31, 2015.  (Commission's op. at 3.)  R.B. explained at these hearings that "she delayed reporting [Petitioner's] misconduct because it took many years to come to an understanding that her relationship with [Petitioner] was not one of equals and that it was inappropriate."  (Commission's Finding of Fact No. 14.)  She also explained that she harbored guilt and shame about the relationship and initially did not want to destroy Petitioner's life.  *Id.*  R.B. testified that she did

---

**(continued…)**

occurrence or date of discovery up until five years after the child or student reaches 18 years of age."

disclose the relationship to her former debate coach, Timothy Stroud, sometime in 2002-03. (Commission's Finding of Fact No. 15.)

Following this disclosure, Stroud reported the allegations to the Iowa Department of Health and Human Services, mistakenly believing that Petitioner was teaching in Iowa, as well as the Fairfax County Public Schools. A representative of the latter informed Stroud that there was nothing it could do as he was no longer a teacher in their district. R.B. was unaware that Stroud had reported her allegations to either entity. Further, there was no evidence presented at the hearings that Petitioner affirmatively disclosed his alleged misconduct at any time. (Commission's Findings of Fact Nos. 16-19.)

In his proposed report, the hearing officer credited the testimony of R.B., and noted a significant amount of documentary evidence, such as notes, cards, and a letter from Petitioner to R.B., which corroborated R.B.'s allegations regarding an inappropriate relationship with Petitioner. The hearing officer noted that R.B.'s credible testimony further established that Petitioner accessed pornography on his school-issued computer. The hearing officer concluded that the credible testimony of R.B., coupled with the documentary evidence, established that Petitioner had engaged in conduct constituting immorality, intemperance, and negligence, which warranted revocation of Petitioner's educator certification and employment eligibility. (Commission's Finding of Fact No. 20.)

### Petitioner's Exceptions

Petitioner thereafter raised the following four exceptions to the hearing officer's proposed report, none of which related to the hearing officer's findings and

6

conclusions that he engaged in an inappropriate and sexual relationship with R.B. or that he accessed pornography on a school-issued computer:

> 1. The Hearing Officer's proposed report omits key facts regarding [Petitioner's] statute of limitations defense.
>
> 2. The Hearing Officer's Proposed Report inappropriately adopted the Commission's interpretation of the Statute of Limitations contained in their [sic] Memorandum and Order dated October 15, 2014, issued in response to [Petitioner's] Motion to Dismiss.
>
> 3. The Hearing Officer denied [Petitioner] his due process rights by failing to address the statute of limitations defense.
>
> 4. The Hearing Officer erred in failing to dismiss the Department's Charges in their entirety as untimely.

(Commission's op. at 10.)

### Commission's Memorandum and Order

By Memorandum and Order dated June 29, 2016, the Commission denied Petitioner's exceptions and directed that Petitioner's professional educator certification and eligibility to be employed as a charter or cyber charter school staff member or a contracted educational provider staff member be immediately revoked.

The Commission began by addressing Petitioner's fourth exception, noting that Petitioner had advanced varying arguments as to when the time to file a complaint actually expired, with his most recent argument that the time to file a complaint began to run when Stroud reported R.B.'s allegations to the Fairfax County Public Schools in 2002 or 2003. However, the Commission noted that the theory on which this argument was premised had "previously been squarely addressed and rejected" by this Court in *Seltzer v. Department of Education*, 782 A.2d 48 (Pa.

7

Cmwlth. 2001). The Commission went on to describe our holding in *Seltzer*, wherein we rejected an untimeliness challenge under section 9(a) of the PEDA, *formerly* 24 P.S. §2070.9(a), to a complaint filed by the Department.[4] In that case, the petitioner had argued that the Department's complaint was untimely because interested parties were aware of her alleged misconduct more than a year prior to the filing of the Department's complaint and such knowledge must be imputed to the actual interested party, i.e., the Department. (Commission's op. at 10-12.)

The Commission specifically rejected Petitioner's argument that Stroud's reporting of the allegations to the Fairfax County Public Schools in 2002 or 2003 initiated the one-year period within which a complaint had to be filed. The Commission described Petitioner's argument as another attempt to impute the knowledge of another potentially interested party to the Department, identical to "notice of one is notice to all" theory we rejected in *Seltzer*. The Commission noted that such interpretation of the statute would allow Petitioner to evade responsibility for his predatory sexual conduct by virtue of the fact that a former out-of-state employer (Fairfax County Public Schools) failed to act. The Commission then cited *Seltzer* for the rule that only an affirmative disclosure of the conduct by the educator, which did not happen here, could preclude the filing of a complaint by other interested parties under the discovery exception to the one-year time limit. (Commission's op. at 13-14.)

The Commission also rejected an alternative argument raised by Petitioner in previous pleadings that the discovery language of section 9(a) is

---

[4] The challenge was actually brought by the petitioner under section 1259(a) of the former Teacher Certification Law, Act of December 12, 1973, P.L. 397, *formerly* 24 P.S. §12-1259(a). We noted that the section had been renumbered as 9(a) under the newly titled PEDA.

inapplicable to any complaint involving sexual abuse or exploitation and that the time to file a complaint expired on July 28, 2006, when R.B. reached the age of 23. In other words, the Commission noted that Petitioner was asserting that the amendment to add the sexual abuse or exploitation language to section 9(a) created two separate and distinct limitation periods. The Commission described Petitioner's interpretation as even more restrictive than the one we rejected in *Seltzer*, plainly erroneous, and rendering an absurd result. (Commission's op. at 14-17.)

The Commission stated that the amendment clearly left intact the one-year time limit and its discovery exception while creating an additional exception to allow an interested party to file a complaint involving sexual abuse or exploitation up to five years after the victim turns 18 years of age even if the conduct occurred and was discovered more than one year before the filing of the complaint. The Commission characterized the amendment as enlarging the time period in which complaints involving sexual abuse or exploitation can be filed when the conduct is discovered before the victim reaches 23 years of age and in no way precluding the filing of a complaint after the victim reaches this age. Further, the Commission noted that, following Petitioner's interpretation, an interested party who discovered a less serious ground for discipline could file a complaint at any time within one year of the discovery of the misconduct regardless of how many years had elapsed since the misconduct; however, if the misconduct involved sexual abuse or exploitation, an interested party would be barred from the filing of a complaint once the victim reached 23 years of age. (Commission's op. at 15-18.)

The Commission then proceeded to deny Petitioner's remaining exceptions. Regarding the first exception, the Commission noted that Petitioner's proffered facts did not comport strictly with the record, were merely tangential to the

legal issues in the case, and would not alter the conclusion that the Department's complaint was not time-barred. Regarding the second and third exceptions, the Commission concluded that the hearing officer ruled appropriately by incorporating its legal reasoning on the merits of Petitioner's limitations argument, and only did so after concluding that the facts of record, developed at the hearing, did not affect the legal analysis giving rise to its conclusion. Moreover, the Commission noted that it fully considered and rejected Petitioner's limitations defense. (Commission's op. at 20-22.)

As for the sanction, the Commission concluded that Petitioner's misconduct in the nature of immorality, intemperance, and negligence warranted revocation of his educator certification and employment eligibility. The Commission accepted the hearing officer's reasoning that revocation was necessary to protect the health, safety, and welfare of students. The Commission emphasized the fiduciary duty that all educators owe to their students, most importantly the duty to protect students from harm. The Commission described Petitioner's actions of engaging in sexual misconduct with a student as the most egregious breach of an educator's duty and one which warrants immediate discipline.

**Discussion**

On appeal to this Court,[5] Petitioner reiterates his arguments that the Department's claim, which was premised on the allegations of an alleged 29-year old

---

[5] Our review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact were supported by substantial evidence. *Gow v. Department of Education, Professional Standards and Practices Commission*, 763 A.2d 528, 531 (Pa. Cmwlth. 2000), *appeal denied*, 781 A.2d 149 (Pa. 2001).

10

victim that occurred more than 13 years ago, was untimely, and that the one-year statute of limitations in section 9(a) of the PEDA began to run in 2002 when Stroud reported the allegations to the school district where the alleged incidents occurred. Additionally, Petitioner argues that the Commission's interpretation was not entitled to deference because it construed a statute of limitations to have no end and did not reflect the intent of the General Assembly in amending section 9(a) in 2000 to add the sexual abuse or exploitation language. We disagree with each of Petitioner's arguments.

**Evolution of the Educator Misconduct Statutes**

However, before we reach the merits of Petitioner's arguments, we begin with a brief history of the evolution of the relevant statutory provisions relating to educator misconduct. Prior to December of 1989, the Secretary of the Department had the authority under former 24 P.S. §1225(j)[6] to suspend or revoke the certification of an educator and there was no statutory provision limiting the ability of the Department to pursue a suspension or revocation of a teacher's certification. Effective December 14, 1989, Article XII of the Public School Code of 1949 was amended to establish the Commission, an independent body, as the adjudicator in educator misconduct cases and to create an educator discipline infrastructure.[7] This section of the Public School Code became known as the Teacher Certification Law.

---

[6] Section 2 of the Act of May 29, 1931, P.L. 210, added by section 2 of the Act of August 13, 1963, P.L. 689, 24 P.S. §1225(j) (repealed by Act 71 of December 14, 1989).

[7] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§12-1251 - 12-1268.

11

Section 1259(a) of the Teacher Certification Law included a new time limitation, providing as follows:

> A proceeding to discipline a professional educator shall be initiated by the filing of a complaint with the department by any interested party within one year from the date of the occurrence of any alleged action specified under section 5(a)(11), or from the date of its discovery. If the alleged action is of a continuing nature, the date of its occurrence is the last date on which the conduct occurred.

*Formerly* 24 P.S. §12-1259(a).

In 2000, the General Assembly passed amendments to the Teacher Certification Law, which became effective February 20, 2001. These amendments renamed the Teacher Certification Law the PEDA and included additional language in the time limitation section, then found at section 9(a) of the PEDA, formerly 24 P.S. §2070.9(a), relating to the sexual abuse and exploitation of a child or student. More specifically, section 9(a) provided as follows:

> A proceeding to discipline a professional educator shall be initiated by the filing of a complaint with the department by any interested party within one year from the date of the occurrence of any alleged action specified under section 5(a)(11), or from the date of its discovery. Complaints involving sexual abuse or exploitation of a child or a student may be filed beyond the date of the alleged occurrence or date of its discovery up until five years after the child or student reaches 18 years of age. If the alleged action is of a continuing nature, the date of its occurrence is the last date on which the conduct occurred.

24 P.S. §2070.9(a) (repealed by the Act of December 18, 2013, P.L. 1205).

In 2013, the General Assembly passed amendments to the PEDA, which became effective February 18, 2014. These amendments renamed the PEDA the EDA and eliminated any time limitations for the filing of educator misconduct

complaints. The new section 9(a) of the EDA simply states that "[t]he filing of a written educator misconduct complaint with the department will initiate the department's review and investigation of an educator." 24 P.S. §2070.9(a).

## Timeliness of the Department's Complaint

Petitioner argues that the Commission erred as a matter of law in failing to conclude that complaints involving sexual abuse or exploitation of a student must be filed before the student reaches the age of 23. Alternatively, Petitioner argues that the one-year statute of limitations in section 9(a) of the PEDA began to run in 2002 when Stroud reported the allegations to the Virginia school district where the alleged incidents occurred. Petitioner notes that R.B. was 29 years of age at the time the Department filed its educator misconduct complaint against him. Petitioner asserts that section 9(a) created two distinct limitations periods, the first a general limitation requiring that a complaint be filed within one year of the date of the alleged misconduct or its discovery, and a second more specific limitation that applies to complaints involving sexual abuse or exploitation of a child or student requiring a complaint to be filed before the child or student reaches 23 years of age. Petitioner points to the legislative history behind the 2000 amendments, which added the language discussing sexual abuse or exploitation of a child or student, as supportive of its assertion that a complaint filed after an alleged victim turns 23 years of age is untimely.

In response, the Department contends that the Commission properly determined that its complaint, filed within one year of the discovery of Petitioner's misconduct involving a sexual relationship with a student, was timely under the Teacher Certification Law. The Department notes that while the notice of charges

13

references a period of misconduct from January 1998 to June 2001,[8] the record reflected that Petitioner's misconduct had ceased by the end of R.B.'s junior year, which would have been late in the spring of 2000, during the time that the Teacher Certification Law was in effect. In any event, the Department also contends that an examination of the legislative history surrounding the 2000 amendments to the Teacher Certification Law reveals the General Assembly's intent to protect students from the worst breach of an educator's fiduciary duty, sexual misconduct. Further, the Department contends that the Commission's determination was consistent with, and supported by, this Court's prior decision in *Seltzer*. We agree with the Department.

Generally, when a matter involves an issue of statutory interpretation, the courts have given an administrative agency charged with administering the particular statute a substantial amount of deference. *Rosen v. Bureau of Professional and Occupational Affairs*, *State Architects Licensure Board*, 763 A.2d 962, 967-68 (Pa. Cmwlth. 2000), *appeal denied*, 781 A.2d 150 (Pa. 2001). However, such deference to an administrative agency is not required where the agency's interpretation frustrates legislative intent. *Id.* at 968. Indeed, section 1921(a) of the Statutory Construction Act of 1972 provides that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S. §1921(a). Moreover, we always presume that the General Assembly did not "intend that a result that is absurd, impossible of execution or unreasonable." Section 1922(1) of the Statutory Construction Act, 1 Pa.C.S. §1922(1).

---

[8] The notice of charges actually references a period of misconduct from January 1998 to December 2001.

14

There is no question that the Department filed the educator misconduct complaint against Petitioner well within one year after its discovery of Petitioner's gross misconduct. R.B. reported the misconduct to the District on September 2, 2012; the District filed the mandatory report with the Department on September 18, 2012; and the Department filed its complaint against Petitioner two days later, on September 20, 2012. Consistent with the discovery exception set forth in either section 1259(a) of the Teacher Certification Law or section 9(a) of the PEDA, the Department's complaint was timely.

Even examining the additional language relating to the sexual abuse and exploitation of a child or student that was added by section 9(a) of PEDA, we believe the Department's complaint was timely filed. Contrary to Petitioner's argument, we do not believe this additional language foreclosed any and all complaints against an educator once the victim reaches 23 years of age. This additional language merely added an exception to the one-year limitation for certain cases by allowing an interested party to file a complaint up to the time the victim turns 23, regardless of when the misconduct occurred or was discovered. The Department focuses on the General Assembly's use of the permissive "may" in this additional language, whereas the one-year limitation is prefaced by the mandatory "shall."[9]

---

[9] The Department set forth the following example to show how the additional language and its "may" provision actually expanded the time in which complaints involving sexual abuse or exploitation of a child or student can be filed. If such allegations are discovered by the Department when a child/student is only 8 years of age, that child/student may be too scared to testify against the educator or otherwise participate in the educator disciplinary process, and thereby precluding the Department from proceeding with a complaint. However, another interested party, such as the mother of the child/student, could decide to pursue the claim once the child/student gets older. Under section 9(a) of PEDA, the interested party could bring a claim up until the child reaches 23 years of age.

Additionally, we agree with the Department that the interpretation proposed by Petitioner, i.e., limiting the discovery position to only include claims of victims under 23 years of age when the claims involve allegations of sexual abuse or exploitation, the most serious breach of an educator's fiduciary duty to a student, renders an absurd result. Petitioner's interpretation would further serve to preclude taking action against an educator for conduct involving sexual abuse or exploitation, while at the same time allow the Department to take action for less significant professional misconduct under the one-year discovery exception.

Moreover, contrary to Petitioner's argument, the legislative history surrounding the 2000 amendments to the Teacher Certification Law does not support his interpretation. While Petitioner cites to a discussion between two State Representatives, this discussion merely confirmed the permissive nature of the sexual abuse/child exploitation exception and the fact that it applies until the child reaches 23 years of age. As the Commission noted in its decision, neither this discussion "nor the clear language of the statute substantiate the elimination of the discovery exception . . . The amendments merely added an additional exception to the one-year limitation for cases involving sexual abuse or exploitation by *permitting* interested parties to file a complaint up until the date that the victim reaches 23 years of age regardless of when the conduct occurred or was discovered." (Commission's op. at 16-17) (emphasis in original).

Furthermore, with regard to Petitioner's argument that the one-year statute of limitations in section 9(a) of the PEDA began to run in 2002 when Stroud reported the allegations to the school district where the alleged incidents occurred, we agree with the Commission and the Department that our prior decision in *Seltzer* is controlling. In *Seltzer*, the educator assumed the position of Pupil Services

Coordinator for the Western Montgomery Center for Vocation and Technical Studies (Center) on July 1, 1993. In January 1995, the Office of Auditor General's Bureau of School Audits (Auditor) conducted a regularly scheduled audit of the Center for years 1992-1993 and 1993-1994 and discovered discrepancies between student records maintained by the Center and records maintained by the local high schools, whose students attended the Center. The Auditor thereafter performed a more extensive investigation and issued a final report to the Department on August 25, 1995, which prompted the filing of a complaint against the educator four days later.

The Department immediately filed a complaint against the educator on August 29, 1995. In a notice of charges filed with the Commission, the Department alleged that the educator's conduct was immoral, negligent, intemperate, and incompetent. The notice of charges also alleged unlawful use of a professional title and sexual harassment. The Commission ultimately issued a decision revoking the educator's certification. On appeal to this Court, the educator argued, *inter alia*, that the Department's complaint was untimely under section 1259(a) of the Teacher Certification Law because the alleged misconduct occurred during the 1993-94 school year and there were interested parties, including a teacher and the director of the Center, aware of this misconduct for a period longer than one year prior to the Department's filing of a complaint. The educator further argued that the knowledge of these interested parties should be imputed to the Department. The Department countered that the complaint was timely as it was filed within one year from the date of its discovery of the alleged misconduct, on August 25, 1995, when it received the Auditor's report.

This Court rejected the educator's argument, describing her interpretation of section 1259(a) as providing that a "notice *of* one is notice to all,"

which created an absurd result. *Seltzer*, 782 A.2d at 56 (emphasis added). We recognized the flaw in the educator's argument in that it presumed that any potential interested party will not only recognize the misconduct but will also act to report the misconduct appropriately. We noted that any inaction on the part of such an interested party "would vitiate future discovery and permit the educator to evade accountability merely because the [interested party] acted in an unprofessional manner." *Id.* Recognizing, however, that the limitation period could not be merely disregarded, we adopted instead a "notice *to* one is notice to all" approach, which required an educator to "affirmatively act to disclose the conduct to preclude the filing of a complaint under the discovery exception to the one-year time limit." *Id.* at 57. Because the educator had not affirmatively disclosed her conduct, we held that the Department's complaint was timely filed under the discovery exception.

The reasoning of *Seltzer* applies equally to the present case, as Petitioner attempts to revive the "notice of one is notice to all" approach we specifically rejected in *Seltzer* by arguing that Stroud's report of the allegations against him in 2002 to an out-of-state school district, the Fairfax County Public Schools in Virginia, equates to a report by an interested party that triggers the initiation of the one-year limitation for filing an educator misconduct complaint in this Commonwealth. In other words, Petitioner argues that notice should be imputed to the Department and that the one-year discovery exception began to run for the Department in 2002 by virtue of Stroud's report to the Virginia school officials. Such logic is both unreasonable and absurd.

In addition, Petitioner did not file exceptions to the hearing officer's proposed report finding that he had engaged in conduct constituting immorality, intemperance, and negligence; rather, Petitioner only excepted to the timeliness of the

18

Department's filing of the complaint. Further, as the Commission noted, it was undisputed that Petitioner never affirmatively disclosed his misconduct at any time. Consistent with *Seltzer*, Stroud's reporting of the allegations to the school officials in Virginia did not trigger the one-year limitation under section 1259(a) of the Teacher Certification Law or section 9(a) of PEDA, and, hence, the complaint filed by the Department herein was timely.

## Conclusion

Based on the statutory interpretations discussed above, as well as the fact that our prior decision in *Seltzer* controls the outcome of this case, the Commission did not err as a matter of law in concluding that the Department's complaint was timely filed.

Accordingly, the Commission's order is affirmed.[10]

_____
PATRICIA A. McCULLOUGH, Judge

---

[10] Petitioner raises an additional allegation in his brief that the Department could not pursue the issue of the pornography on the school-issued computer because this issue was not included in the Department's educator misconduct complaint and was only first set forth in the notice of charges. The Department, however, contends that Petitioner waived this issue by failing to raise the issue below. We agree with the Department. Petitioner did not raise this issue in his exceptions before the Commission; instead, Petitioner only first raised it in his brief to this Court. The law is well settled that issues not raised before the government unit are waived and will not be heard or considered by the appellate court. *See* Pa.R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit. . . ."); *Gow*, 763 A.2d at 533 (the educator waived his statute of limitations claim by failing to raise such claim in his exceptions filed with the Commission).

19

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James C. Whalen,            :

           Petitioner       :

           :    No. 1263 C.D. 2016

    v.               :

           :

Department of Education,      :

           Respondent     :

## ORDER

AND NOW, this 8th day of May, 2017, the order of the Department of Education's Professional Standards and Practices Commission, dated June 29, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge