**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3299
_____

JOHN DOE,
             Appellant

v.

GOVERNOR OF PENNSYLVANIA; ATTORNEY GENERAL OF PENNSYLVANIA;
SECRETARY PENNSYLVANIA DEPARTMENT OF EDUCATION

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(M.D. Pa. Civ. No. 1:18-cv-01370)
District Judge: Hon. John E. Jones, III

_____

Argued: April 2, 2019

Before: CHAGARES, HARDIMAN, and SILER, JR.[*], *Circuit Judges*

(Filed: November 4, 2019)

Aaron D. Martin (Argued)
Michael D. Reed
Mette, Evans & Woodside
3401 North Front Street
Post Office Box 5950
Harrisburg, PA 17110
      *Counsel for Appellant*

---

[*] Hon. Eugene E. Siler, Jr., Senior Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.

Josh Shapiro
Sean A. Kirkpatrick (Argued)
J. Bart DeLone
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
        *Counsel for Appellee*

Joseph F. Canamucio
Pennsylvania State Education Association
400 North Third Street
Harrisburg, PA 17101
        *Counsel for Amicus Curiae*
        *Pennsylvania State Education Association*

———————————

OPINION[**]

———————————

**SILER**, *Circuit Judge*

Plaintiff John Doe appeals the district court's denial of his motion for a preliminary injunction in this First Amendment case. We will vacate the district court's order and remand for proceedings consistent with this opinion.

I.

The plaintiff in this case—using the pseudonym "John Doe"—faced state criminal charges. He pleaded not guilty and later entered an Accelerated Rehabilitative Disposition program. That was the end of his criminal case, but the beginning of this controversy.

———————————

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Only a few months after the state filed criminal charges against Doe, an unknown party made a complaint with the Pennsylvania Department of Education against Doe. The complainant could do so because Doe had a license to teach elementary school, and in Pennsylvania, the "Educator Discipline Act," 24 P.S. § 2070.1a *et seq.*, allows people to report teacher misconduct. Under the Act, the Professional Standards and Practices Commission reviews "educator misconduct cases and [creates] an educator discipline infrastructure." *Whalen v. Dep't of Educ.*, 161 A.3d 1070, 1076-77 (Pa. Commw. Ct. 2017). When someone reports teacher misconduct, the Commission investigates. And so it did with Doe.

Doe found out about the investigation in May 2018 when the assistant chief counsel in the Pennsylvania Governor's Office of General Counsel sent him a letter about it. The letter explained that the department had found probable cause to move forward. But the investigation, the letter said, must remain confidential—even the letter itself must not be revealed. In bold and underlined text, the letter stated that "Release or publication of this document is a crime and may result in a conviction of a third degree misdemeanor. 24 P.S. § 2070.17b." Appellant's Redacted Op. Br. 5. The whole process was "<u>strictly confidential</u>." *Id.* Doe could not tell anyone (except his attorney) that someone had filed a complaint. *Id.* Nor could he show anyone (except his attorney) the letter he received. *Id.* If he did, he could be charged with a misdemeanor. 24 P.S. § 2070.17b(b).

Though not criminal itself, the Commission's investigation threatened serious consequences. Doe could lose his teaching license if the Commission determined he committed an immoral, intemperate, or cruel act. *See* 24 P.S. §§ 2070.9a, 2070.9c(a)(1),

3

(3)-(4). If the Commission imposed discipline, Doe could appeal to the Commonwealth Court. *See* 24 P.S. § 2070.15.

It never came to that, though, because the Commission ultimately declined to discipline Doe. The same assistant chief counsel sent Doe another letter in August 2018 informing him that the Department had dismissed the complaint, and the case was closed. Like the first one, this letter again emphasized that it was confidential, and release or publication of it could result in criminal penalties.

Doe wanted to talk about the experience, but the Act's confidentiality provision, 24 P.S. § 2070.17b, prevented him from revealing the letters or other information he learned through the investigation. Discussing anything about the investigation—even its existence—would make Doe subject to criminal penalties. *See* 24 P.S. § 2070.17b(b). But not entirely. Doe could ask the Commission to release information, something the Commission does when it is "just and proper." 24 P.S. § 2070.17b(e). Doe requested as much, and, at the same time, filed this lawsuit under 42 U.S.C. § 1983, alleging that the Act and its confidentiality provisions violated his free speech rights under the First Amendment, as incorporated under the Fourteenth Amendment. He named the Governor, Attorney General, and Secretary of the Department of Education as defendants in his July 2018 complaint. He also sought a preliminary injunction to stop enforcement of the Act against him.

A month later, the Commission ended its investigation and dismissed Doe's case, finding no reason for discipline. Back in federal court two months later, the district court determined that the Commission's dismissal rendered a preliminary injunction

4

unnecessary. The court ruled that "the dismissal of the underlying investigation removed the exigent circumstances underlying Plaintiff's Motion for Preliminary Injunction." Appellees' Redacted Br. 5. That was the full extent of the district court's analysis. In the same order, it set a briefing schedule for mootness and abstention issues.

Finally, two weeks after the district court denied the preliminary injunction, the Commission rejected Doe's request to make the information public. Doe did not appeal this decision to the Commonwealth Court. Instead, he filed this interlocutory appeal under 28 U.S.C. § 1292(a)(1) asking this court to reverse the district court's denial of his preliminary injunction motion.

## II.

When a district court denies a preliminary injunction, we review "the court's findings of fact for clear error, its conclusions of law de novo, and the ultimate decision . . . for an abuse of discretion." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017), *as amended* (June 26, 2017) (quoting *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 109 (3d Cir. 2010)). Although a preliminary injunction is an extraordinary remedy with limited application, this court "must reverse if the district court has proceeded on the basis of an erroneous view of the applicable law." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *Apple Computer Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1242 (3d Cir. 1983)).

We may also consider Eleventh Amendment issues for the first time on appeal. *In re Hechinger Inv. Co. of Del., Inc.*, 335 F.3d 244, 250-51 (3d Cir. 2003).

III.

Although this case is before us on the denial of a preliminary injunction motion, defendants argue we need not address that issue because we can end this case for another reason: Doe sued the wrong parties. The Governor, Attorney General, and Education Secretary argue that Doe cannot proceed against them because they do not have a connection with the enforcement of the statute. They say they have never enforced the statute, they never will enforce the statute, and, they claim, they are unsure whether they even *could* enforce the confidentiality provision. So, defendants argue, if Doe wants relief, he will have to look elsewhere.

This argument flows from the Eleventh Amendment and the well-established *Ex Parte Young* doctrine. 209 U.S. 123 (1908). The Eleventh Amendment generally bars suits against states, which extends to state officials, but *Young* allows plaintiffs to sue state officials for prospective relief based on violations of federal law. *Id.* at 157. The named official, though, cannot be anyone—he or she must have "some connection with the enforcement" of the allegedly unconstitutional statute. *Id.* So if the named defendants have no such connection, Doe cannot sue them.

The district court never addressed this issue because defendants never raised it below. We can consider the argument for the first time on appeal, *see In re Hechinger*, 335 F.3d at 250, but we do not have to, *see Bolden v. Southeastern Pa. Transp. Auth.*, 953 F.2d 807, 812 (3d Cir. 1991) (en banc). In *Bolden*, we explained that sometimes when "an Eleventh Amendment issue is not raised in the district court, a lack of relevant evidence in the district court record might impede us from deciding the issue." *Id.*

Doe says the Governor could bring a criminal prosecution under 71 P.S. § 732-301(6), which allows the Office of General Counsel to "[i]nitiate appropriate proceedings . . . when an action or matter has been referred to the Attorney General and the Attorney General refuses or fails to initiate appropriate proceedings." The Governor's Office seems prepared to do so, Doe argues, because it sent him letters warning him about the criminal penalties for violating the confidentiality provision. And the Attorney General can prosecute "[c]riminal charges investigated by and referred to him by a Commonwealth agency arising out of enforcement provisions of the statute charging the agency with a duty to enforce its provision." 71 P.S. § 732-205(a)(6). But whether these provisions provide an enforcement connection strong enough to satisfy *Young* turns on a state law question, something we are ill-equipped to resolve on this scant record. *See Lytle v. Griffith*, 240 F.3d 404, 410 (4th Cir. 2001) (ruling that when the *Young* analysis requires "a determination of disputed questions of fact and state law" the district court should address the issue first). After all, district courts are "in the best position to address in the first instance the competing questions of fact and state law necessary to resolve the Eleventh Amendment issue." *Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 515 n.19 (1982). The district court should consider the defendants' potential connection with a more fully developed record and briefing. *See Bolden*, 953 F.2d at 812.

Not so with the Education Secretary. Nothing suggests the Secretary can bring criminal charges. And because the Education Secretary cannot enforce the confidentiality provision's criminal penalties, he has no connection to the law's enforcement and is not a proper party in this lawsuit.

7

## IV.

That brings us to the district court's denial of Doe's preliminary injunction motion. In ruling on such motions, courts consider: (1) the likelihood of success on the merits; (2) irreparable harm if the injunction is denied; (3) harm to the nonmoving party; and (4) the public interest. *Kos*, 369 F.3d at 708. Courts balance these factors once the moving party "meets the threshold on the first two." *Reilly*, 858 F.3d at 176. In First Amendment cases, though, the first prong—likelihood of success—works differently: A plaintiff need demonstrate only a colorable claim that his rights have been infringed before the burden shifts to the government, which must justify the law under the relevant level of scrutiny—either intermediate or strict (depending on whether the law is content neutral or content based). *Id.* at 180 & n.5. If the government justifies the law, then the preliminary injunction is improper because the plaintiff failed to show a likelihood of success on the merits. *Id.*

*Reilly* is instructive on how this plays out. There, plaintiffs challenged a law limiting their ability to protest in front of abortion clinics. *Id.* at 175-76. The district court found plaintiffs did not demonstrate a likelihood of success on the merits, "and for that reason alone it denied" the motion for a preliminary injunction. *Id.* at 176. The district court went off course, though, when it failed to use the proper burden-shifting analysis applicable to First Amendment cases. *Id.* Because First Amendment cases require the *government*—through either strict or intermediate scrutiny—to justify speech-regulating laws at trial, the burden also rests with the government at the preliminary injunction stage. *Id.* at 180 n.5. So long as the plaintiff makes a colorable First

8

Amendment claim, the government must justify its law. We vacated and remanded in *Reilly* because the district court "did not provide a full analysis of whether to grant [the injunction]." *Id.* at 176.

And also here. Indeed, the district court's order denying the injunction considered much less than what the *Reilly* court weighed. Here, the district court did not consider the preliminary injunction factors at all. Instead, it denied plaintiff's motion because "exigent circumstances" no longer existed. In so ruling, the district court seemingly believed that once the Commission ended its investigation, Doe no longer needed the injunctive relief. But that is not so. Doe challenges the criminal prosecution statute, which still looms over his head if he ever reveals information about the investigation.

When a district court's order "does not adequately support the resolution of a motion for preliminary injunction, we may vacate and remand for additional findings." *Kos*, 369 F.3d at 712. The *Reilly* court did so when the district court failed to apply the proper test. *Reilly*, 858 F.3d at 180. True, we could instruct the district court to grant or deny the injunction. *Kos*, 369 F.3d at 712. But here the record is underdeveloped, and it would be difficult to resolve Doe's motion at this stage. The district court should instead hold a hearing and fully consider the parties' positions.

We will vacate the district court's order and remand with instructions for the district court to hold a hearing and properly consider the preliminary injunction factors.